Ronald BUTLER, Plaintiff/Appellant,

v.

Lynda BALLARD, Defendant/Appellee.

Court of Appeals of Tennessee,
Western Section, at Jackson.

June 7, 1985.

Application for Permission to Appeal
Denied by Supreme Court
Aug. 26, 1985.

Bruce D. Brooke, Memphis, for plaintiff/appellant.

John J. Thomason, Thomason, Hendrix, Harvey, Johnson, Mitchell, Blanchard & Adams, Memphis, for defendant/appellee.

TOMLIN, Judge.

This is an appeal by plaintiff from an adverse jury verdict in the Circuit Court of Shelby County, where plaintiff had sued defendant for damages for personal injuries suffered by him in a motorcycle-automobile accident at a Memphis intersection. Plaintiff does not challenge the jury verdict as such. Instead, he sets forth as issues some eight errors alleged to have been made by the trial court during the course of the trial. The principal questions presented are (1) whether or not the trial court erred in denying plaintiff's hearsay objection to certain portions of plaintiff's hospital record, and (2) whether the trial court erred in failing to properly charge the jury as to remote contributory negligence. We resolve both these issues of law in favor of plaintiff and reverse and remand this case for a new trial.

At the time of the accident, plaintiff was thirty years of age. Among his recreational activities was the repairing and driving of motorcycles. At about 5:00 on the afternoon in question, plaintiff was operating his motorcycle in a southerly direction in the inside lane on Getwell, a street that runs north and south, consisting of four traffic lanes with a middle turn lane. Getwell intersects with several streets, one of them being Rhodes Road, a street that runs east and west. Traffic at this intersection is controlled by an electric traffic control signal suspended over the center of the intersection.

Plaintiff was accompanied by two of his friends, each of whom was riding a motorcycle. Traffic at that time of day was heavy. Defendant was driving her automobile north on Getwell and after proceeding into the middle turn lane at the intersection described herein, attempted to execute a left turn on to Rhodes Street. In so doing, her automobile struck the motorcycle being driven by plaintiff, causing substantial personal injuries, including permanent brain damage, as a result of which plaintiff had no recollection of the facts of the accident.

In his complaint, plaintiff charged defendant with multiple acts of both common law and statutory negligence. Among the defenses raised by defendant in her answer was that plaintiff was guilty of proximate or remote contributory negligence in that

plaintiff violated the common law of Tennessee, Tennessee state statutes, and Memphis city ordinances by operating his motorcycle while under the influence of intoxicants and drugs. Numerous factual issues were presented to the jury, including the speed of the respective vehicles, particularly the motorcycle, the color of the traffic control light at the intersection at the time of the accident, and the alleged use of intoxicants by plaintiff earlier in the day of the accident.

Plaintiff, in his testimony, denied the use of either drugs or alcohol on the day of the accident. At the time plaintiff was admitted to Eastwood Hospital, an employee of the hospital included as part of plaintiff's admitting history a statement taken from a person or persons unknown, that on that day plaintiff had ingested a half of a pint of scotch and had smoked marijuana. There was a second reference to this statement from an unknown source in plaintiff's hospital records in a nurse's admission/discharge assessment. Notwithstanding plaintiff's objections, the trial court admitted the hospital records of plaintiff, including the statement concerning the ingestion of alcohol and drugs, as substantive evidence without qualification or limitation.

At the close of all the proof, the trial judge ruled as a matter of law and so instructed the jury that they should not find plaintiff guilty of negligence on the basis of operating his motorcycle while under the influence of drugs and intoxicants. After deliberating, the jury returned with a verdict, finding both the plaintiff and the defendant guilty of negligence, but awarding plaintiff $18,000. Following a lengthy dialogue with the jury regarding the question of proximate and remote contributory negligence of plaintiff and negligence of defendant, the court once again sent the jury to the jury room for further deliberation. The jury returned a second time with a verdict, finding both plaintiff and defendant guilty of negligence. Following another lengthy dialogue with the jury and counsel for the parties, the court again sent the jury to the jury room with a new verdict form for further deliberation. When the jury returned a third time, they announced a verdict in favor of defendant. After further interrogation of the jury, the court decided to accept the verdict and excused the jury.

## I. ADMISSION OF THE HOSPITAL RECORDS.

Prior to trial, by a motion *in limine*, plaintiff sought to have excluded from his hospital records references to his alleged use of alcohol and marijuana on the day of the accident. The hospital records had been brought into the case as an exhibit to the deposition of plaintiff's treating physician. The statement objected to appeared in the clinical history sheet and reads as follows:

This 31 y.o. WM had drunk ½ pint of scotch ETOH and smoked some marijuana and was driving his motorcycle when he hit a car and was thrown through his windshield—100 feet according to a friend who witnessed the accident and he landed on pavement.

Defendant contended that the entire hospital record of plaintiff should be admitted into evidence, relying upon the statutory exception to the hearsay rule, the Tennessee Uniform Business Records as Evidence Act, codified in Tenn.Code Ann. § 24–7–111(c). While plaintiff conceded that the record itself fell within the statutory exception to the hearsay rule, he argued that the particular statements complained of were in and of themselves hearsay, thus presenting a case of hearsay within hearsay and rendering such statements inadmissible.

Conceding the question to be a "close one," the trial court allowed the portions objected to in the hospital record to be admitted into evidence without any restriction or qualifications, holding that they fell within the business records exception. Although the court later conceded that it may have made a mistake in admitting the evidence, it took no steps to reverse itself. As noted, notwithstanding the fact that the trial judge, in essence, directed a verdict in

favor of plaintiff on the allegation of driving while under the influence of drugs or intoxicants, he nonetheless permitted counsel for defendant to rely upon this challenged evidence in his closing argument. Having been given the freedom to utilize this evidence, defendant did so adroitly. Counsel, in his closing argument, denoting that the treating physician noted alcohol, said: "That's what he [plaintiff] had been doing; that's what Gary Shone had been doing; that's what Timothy Hancock had been doing; and that's what Ronald Butler [the plaintiff] had been doing, and that's why he is injured today." We are of the opinion that the trial judge erred in admitting this evidence.

The Uniform Business Records as Evidence Act, Tenn.Code Ann. § 24–7–111, provides in pertinent part that:

(c) A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness, testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

Our Supreme Court has considered and interpreted this exception to the hearsay rule in *Graham v. State,* 547 S.W.2d 531 (Tenn.1977). In *Graham* the court set forth the policy behind this hearsay exception.

The Business Records Act is itself an exception to the hearsay evidence rule. It is designed to avoid the unnecessary expense, inconvenience and sometimes impossibility, of calling witnesses, particularly in—but not limited to—those instances wherein the matter sought to be established is routine or uncontroverted. In the case of hospital records, without the act, it could conceivably take numerous witnesses—doctors, technicians, nurses and attendants who joined forces to make a complete and composite history of a patient's hospital treatment. *Id.* at 538.

While the Business Records As Evidence Act is a broad exception to the hearsay rule, it should not be considered a vehicle by which any and every statement recorded in a business record may qualify as admissible evidence. A limitation on this hearsay exception was aptly described by the Connecticut Supreme Court in *Kelly v. Sheehan,* 158 Conn. 281, 259 A.2d 605 (1969): "The mere fact that a record is generally admissible under § 52–180 [Connecticut's Business Records As Evidence Act] 'does not mean that anything and everything contained in the record is necessarily admissible in any given case.' " *Id.* 259 A.2d at 607. (citations omitted). Our Supreme Court in *Graham* likewise recognized that other rules of evidence come into play when considering the business records exception. The Court stated:

Thus it is that the admissibility of records made during the course of business is the general rule and their introduction is not subject to a blanket objection on the basis of hearsay. This does not mean, however, that other recognized rules of evidence may not preclude their introduction in whole, or in part. 547 S.W.2d at 538.

In the case before us, the statement from an unidentified source as to plaintiff's ingestion of intoxicants and drugs appearing within plaintiff's hospital record constitutes hearsay within hearsay, or what has sometimes been called multiple hearsay. In McCormick's Treatise on Evidence, the appropriate framework for considering the admissibility of multiple hearsay is stated as follows:

"On principle it scarcely seems open to doubt that the hearsay rule should not call for exclusion of a hearsay statement which includes a further hearsay statement when both conform to the requirements of a hearsay exception." The common law followed this reasoning, and it is incorporated in Federal and Revised Uniform Rule of Evidence. (1974) 805:

Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.

In the usual situation, two stages of inquiry are involved. First, does the primary statement qualify under a hearsay exception? If so, the hearsay rule allows its use to prove that the included statement was made, if that is the end of the inquiry. Ordinarily, however, the included statement will be offered to prove the truth of what it asserts, and in that event the second stage of inquiry is required, namely does the included statement also qualify under a hearsay exception?

E. Cleary, McCormick on Evidence, § 324.3 (3rd Ed.1984). In determining the admissibility of the challenged statement, we must first determine whether the hospital record, the primary source of information, qualifies under the business records exception to the hearsay rule. Next, we must determine whether or not the challenged statement from the unidentified source was being offered in evidence to prove the truth of what it asserts. Lastly, if the answers to both these preliminary questions are in the affirmative, we then must decide whether this secondary statement qualifies under any exception to the hearsay rule.

We are of the opinion that the application of the rule on multiple hearsay as it relates to hospital records was correctly applied by the Court of Criminal Appeals in *Ledford v. State,* 568 S.W.2d 113 (Tenn.Ct.Crim. App.) *cert. denied* (1978). In *Ledford,* the Court held the hospital record admissible under the Business Records Act but denied the admissibility of certain statements within the hospital record that in and of themselves were hearsay and failed to meet any other hearsay exception. In so holding, the Court stated:

> We think it is clear that most of the excluded entries should have been presented to the jury, for whatever probative value they may have had. The one exception is the notation "States fainted [at] funeral home," which on its face constitutes double hearsay and,

therefore, must satisfy some exception to the hearsay rule beyond the business records exception in order to be admissible.

*Id.* at 118 (citing McCormick, *supra* at § 324.3). As part of the argument in favor of the admissibility of this statement, defendant asserts that the contested statement had a direct bearing upon the diagnosis and treatment of the patient's injuries and was relevant thereto and thus admissible. McCormick's Treatise discusses the admissibility of patient history under the Business Records Act:

> This information, which may be obtained from the patient himself or someone accompanying him, is sought for its bearing upon diagnosis and treatment of the patient's injury or disease. Is this history admissible to prove assertions of facts it may contain? This is a matter of application of the regularly kept records rule, and the primary issue is whether or not the specific entry involved was an entry made in the regular course of the hospital's business. If the subject matter falls within those things which under hospital practice are regarded as relevant to diagnosis or treatment, it is within the regular course of business. If, on the other hand, the subject matter does not relate to diagnosis or treatment, the making of the entry was not within the regular course of the hospital's business and thus it is not admissible even for the limited purpose of proving that the statement was made.
>
> Assuming that the hospital record is admissible to prove that the statement contained in the history was made, is this statement admissible to prove the truth of assertions made in it? In accordance with the general rule, it seems clear that the business record exception cannot support use of the history because the declarant's action in relating the history was not part of a business routine of which he was a regular participant. Here, as elsewhere, however, if the histo-

ry comes within one of the other exceptions to the hearsay rule it is admissible. McCormick, *supra* at § 313.

Cases from other jurisdictions provide us with direction as to the practical application of this rule of evidence. In *Wright v. American General Life Insurance Co.*, 59 N.C.App. 591, 297 S.E.2d 910 (1982), a wife brought an action to recover proceeds of a life insurance policy on her deceased husband. At issue were several statements found in the hospital records of the husband (the patient) that were attributable to plaintiff and her father. The North Carolina Court, in its analysis of the admissibility of the hospital record and the challenged statements within it, stated:

> Plaintiff further contends that, even if these records were generally admissible, they contained statements by plaintiff and her father relating to decedent's drinking habits which should have been excluded as "hearsay on hearsay." "Anything that a party to the action has done, said or written, if relevant to the issues and not subject to some specific exclusionary statute or rule, is admissible against him as an admission." [citations omitted]. The statements attributed to plaintiff were thus admissible as admissions of a party. The statements attributed to plaintiff's father were admissible for the purpose of showing, in part, the basis for the deposed medical witness' diagnosis.
>
> . . . .
>
> The court on two occasions instructed the jury that the statements of plaintiff's father were to be considered only insofar as they tended to show the basis for this medical witness' diagnosis, and that they were not to be considered as substantive evidence.

*Id.* 297 S.E.2d at 914.

A similar result was reached by a New York court applying common law rules. The facts in that case were remarkably similar to the facts in the case now under consideration. In *Geroeami v. Fancy Fruit & Produce Corp.*, 249 App.Div. 221, 291 N.Y.S. 837 (1936). Plaintiff sued to recover for personal injuries received in an automobile accident. The trial court admitted into evidence plaintiff's hospital record which contained a statement that "[p]atient was hit by automobile 25 minutes before admission. He *was intoxicated at the time.'* " *Id.* 291 N.Y.S. at 839. In reversing the action of the trial court, the *Geroeami* court said:

> Here, the person giving the information was not identified and, so far as appears, did not witness the accident. Nor was it shown that the information came from one under a duty to impart it. The hearsay statement referred to contained in the hospital report was therefore clearly incompetent and no doubt highly prejudicial.

*Id.* 291 N.Y.S. at 840.

Among cases from other jurisdictions considering the admissibility of hearsay statements within hospital records are *Bouchie v. Murray*, 376 Mass. 524, 381 N.E.2d 1295, 1297–99 (1978) (a similar analysis of multiple hearsay, but because of statutory differences, the court allowed admission of all statements relevant to treatment and diagnosis); *State v. Thrasher*, 654 S.W.2d 142, 144 (Mo.Ct.App.1983) (here the court excluded multiple hearsay, making the interesting observation that should the person making the report be called to testify in person, he would be unable to testify as to the statement made by the third party); *Incollingo v. Ewing*, 444 Pa. 263, 272, 282 A.2d 206, 215 (1971) (excluding statement in hospital record of unidentified third person); and *State v. Ucero*, 450 A.2d 809, 815 (R.I.1982) (allowed both levels of hearsay as one qualified as a medical record and the other qualified as a statement of medical condition).

 In the case at bar, it should be kept in mind that the trial judge admitted the statement contained within the hospital record for the purpose of proving the truth of what it asserted—that is, that the plaintiff had ingested alcohol and drugs on the day of the accident. In our opinion, this is clearly a case of multiple hearsay. The hospital record in general is admissible

through the Business Records As Evidence Act. For the second-level hearsay statements of the unidentified informant to be admissible, they would either have to fall within a hearsay exception, in which case they could be considered to be admitted as substantive evidence, or they would have to be relevant to the treatment and diagnosis of the plaintiff by the testifying physician and thus so admitted, but with limiting instructions from the court to the effect that they could not be considered for the truth of the matter therein asserted.

In the case *sub judice,* inasmuch as these statements do not fall within any hearsay exception in and of themselves, they should not have been admitted as substantive evidence, or for the truth of the facts asserted. While not the case here, it is readily conceivable that statements such as contained in plaintiff's history might be found to be necessary to the observation, diagnosis, and treatment, and essential to the examination and care of the patient. However, even in factual situations such as this hypothetical one, the trial judge has the responsibility of permitting such statements to go to the jury with limiting instructions to the extent that they could be considered only for such purposes, and could not be considered as substantive evidence.

In this case, we find no basis for consideration of these statements as relevant to any issue in the trial. Defendant does not challenge the treatment and diagnosis of plaintiff by his physicians. The statements are not relevant to any damages claimed by plaintiff. As already noted, the trial court directed a verdict in favor of plaintiff on the issue of operating his motorcycle under the influence of drugs and intoxicants.

■ Furthermore, plaintiff's treating doctor, through whom defendant sought to admit these records, testified that "I can remember the smell of alcohol, but it did not enter my mind to draw an alcohol level, because it really did not pertain, in my opinion, to what we were doing in the case." Later, when asked whether the consumption of alcohol by plaintiff could have affected his ability to drive his motorcycle, the doctor responded, "I can't answer as to his ability to drive a motorcycle, but insofar as his clinical state, it was not a problem." Therefore, we conclude that defendant did not establish that these statements had any relevance to the diagnosis and treatment of the plaintiff in this case. Even if by any stretch of the imagination they might be considered relevant to plaintiff's diagnosis and treatment, the multiple hearsay rule requires that the trial court give limiting instructions clearly stating that the statements can be considered only for a narrow purpose and not for the truth of the matter asserted. No such limiting instructions were given. The admission of these statements as substantive evidence by the trial court was highly prejudicial to plaintiff's case and is ample ground for reversing the jury verdict and awarding plaintiff a new trial.

## II. THE REMOTE CONTRIBUTORY NEGLIGENCE CHARGE.

■ At the conclusion of all the proof, plaintiff submitted a special jury instruction on remote contributory negligence, which was denied by the court. The trial judge did attempt to comply with the requirement in this jurisdiction that in all cases where contributory negligence is an issue, there should be included an instruction on remote contributory negligence. *See Cardwell v. Golden,* 621 S.W.2d 774 (Tenn.Ct.App.) *cert. denied* (1981). The trial judge gave the following charge on remote contributory negligence:

If the plaintiff was guilty of negligence which did not directly and proximately contribute to the accident but only remotely contributed to the accident, then there may be a recovery but you must diminish the amount of damages you award the plaintiff by the degree of remote contributory negligence you find the plaintiff guilty of.

On the other hand, the special request on remote contributory negligence denied by the court and submitted by plaintiff reads as follows:

While negligence of the Plaintiff ordinarily will operate as a complete bar to recovery of damages, such negligence, in order to have that effect, must be proximate. The opposite of "proximateness" is "remoteness". Remote contributory negligence does not operate as a complete bar to recovery by the Plaintiff, but it does operate to reduce the amount which the plaintiff would have been entitled to recover, had he been completely without fault.

Remote negligence is that negligence which is too far removed as to time or place or causative force to be the direct and immediate cause of the accident, although it can be seen that the accident would not have occurred otherwise. Where negligence is continuing and operating as a causative force at the moment of the accident, it is proximate, and not remote.

This rule as to remote contributory negligence applies only to the Plaintiff, its effect, as stated, being to reduce his recoverable damages. It has no application to a defendant, so as to impose some, but not full, liability. A defendant can be held liable only for the results of his proximate negligence.

The basis for the court's denying plaintiff's special request was that it was covered in the general charge. Plaintiff contends that the court's charge as given was insufficient in that it failed to include any definition or explanation of "remote negligence" and only stated what the result would be on the jury's verdict if they found remote contributory negligence on the part of plaintiff.

Defendant contends that since plaintiff's proposed instruction contained a sentence that misstated the law, plaintiff waived any objection to the charges given. We do not understand this to be the law. In *Rule v. Empire Gas Corp.*, 563 S.W.2d 551 (Tenn. 1978) our Supreme Court reviewed the law pertaining to a special request for jury instructions as affected by Tenn.R.Civ.P., Rule 51.02, which provides:

"After the judge has instructed the jury, the parties shall be given opportunity to object, out of hearing of the jury, to the content of an instruction given or to failure to give a requested instruction, but failure to make objection shall not prejudice the right of a party to assign the basis of the objection as error in support of a motion for a new trial.

*Id.* at 553. The Supreme Court in *Rule* interpreted Rule 51.02 as follows:

Rule 51.02 does permit a party to allege error in his motion for a new trial based upon (1) inaccuracy of the charge as given or (2) failure to give a requested appropriate instruction, although no objection or exception in this respect was made at the trial; but we find nothing in the rule which relieves trial counsel of the burden of requesting an instruction to cover alleged omissions in the instructions as given.

*Id.* at 553. Thus, the rule of *Rule* is that when there is an omission by the court in its charge, if this omission is to be a basis of an appeal, counsel must timely object and request an "appropriate" instruction. However, when there is an erroneous instruction or the rejection of a requested proper instruction, an objection by counsel at trial is not a prerequisite to an appeal on that issue.

As for defendant's contention that we should not consider this issue on appeal because plaintiff's tendered instruction for remote contributory negligence was not "exactly correct," plaintiff's special request did contain the correct statement of the law of remote contributory negligence. In considering plaintiff's special request, the trial court very simply could have omitted the erroneous sentence from the charge.

Our Supreme Court has explicitly held that remote contributory negligence must be defined in any charge on that subject to the jury. In *Street v. Calvert*, 541 S.W.2d 576 (Tenn.1976), the Court stated:

"If the plaintiff's decedent, Mrs. Street, was guilty of negligence which did not directly and proximately contribute to the injuries, damages, and

ultimate death, but only remotely contributed to the injuries, damages, and ultimate death of the plaintiff's decedent, then there may be a recovery by the plaintiff, but you must diminish the amount of damages you award the plaintiff, the administrator, by the degree of remote contributory negligence you find Mrs. Street to have been guilty of."

This Court has heretofore held that what is meant by remote contributory negligence should be explained to the jury. *McClard v. Reid,* 190 Tenn. 337, 229 S.W.2d 505 (1950). Our research fails to disclose that this Court has defined remote contributory negligence. We define it as that negligence which is too far removed as to time or place, or causative force, to be a direct or proximate cause of the accident. We suggest that an appropriate charge would state the foregoing definition and add: "If you find the plaintiff guilty of such remote contributory negligence, you must reduce the recovery which you would otherwise award, in proportion to plaintiff's contribution to the injury."

*Id.* at 585. See also the more recent case of *Arnold v. Hayslett,* 655 S.W.2d 941, 945–46 (Tenn.1983).

 It can readily be seen from an examination of the charge given by the trial court that it fails to measure up to the standards of *Street v. Calvert, supra,* in that there is no explanation to the jury of what "remote contributory negligence" means. For this reason, we are of the opinion that the trial court's charge is defective and that it was in error in rejecting that portion of plaintiff's special request that would have rectified that error. The effect of the absence of a clear and concise definition of remote contributory negligence is shown by the confusion in the dialogue among the trial court, the jury, and the counsel for the parties when the trial court had to send the jury back for a second and third time in order for them to reach a verdict acceptable to it.

Based upon our opinion on these two issues, the judgment of the trial court is reversed, and this case is remanded to the Circuit Court of Shelby County for a new trial consistent with this opinion. Costs in this cause are taxed to defendant, for which execution may issue, if necessary.

HIGHERS, J., and McLEMORE, Special Judge, concur.