WEST END RECREATION, INC., Ambrose Brewer, and Peggy Brewer, Plaintiffs–Appellants,

v.

(J.E. HODGE, d/b/a, et al.) United Cities Gas Company and Rheem Manufacturing Company, Defendants–Appellees,

and

Jerry and Ida SIMMONS, Plaintiffs–Appellants,

v.

(J.E. HODGE, d/b/a, et al.,) United Cities Gas Company and Rheem Manufacturing Company, Defendants–Appellees.

Court of Appeals of Tennessee, Eastern Section.

Jan. 20, 1989.

Certiorari Denied by Supreme Court May 8, 1989.

Jim W. Stambaugh, Morristown, for appellants, West End Recreation, Inc., Ambrose and Peggy Brewer.

Charles C. Burks, Jr., Jenkins & Jenkins, Knoxville, for appellants, Jerry and Ida Simmons.

Paul D. Hogan, Jr., Knoxville, for appellees.

## OPINION

ANDERSON, Judge.

From a jury verdict for the defendants, West End Recreation, Inc., its owners, and tenants appeal, contending the trial court committed error in admitting evidence and in allowing improper attorney conduct.

## FACTS

Appellants, West End Recreation, Inc. and others, owned a building which housed a bowling alley, a skating rink, a snack bar, and a game room. On April 5, 1985, the facility was destroyed by an explosion and fire. The Appellants filed suit for damages alleging that gas heaters caused the fire and explosion, and named as defendants the manufacturer, seller, installer, and component parts manufacturer, as well as the gas supplier. The actions against the seller, component parts manufacturer, and installer were dismissed on summary judgments, and the case was tried on the merits against Appellees, United Cities Gas Company ("United") and Rheem Manufacturing Company ("Rheem"). According to the Appellants' theory, the heat exchanger in the gas units failed, allowing the unburned gas to escape the furnace and ignite the explosion. The Appellants also alleged that United failed to odorize the gas to facilitate detection of escaped gases. United and Rheem denied the charges and offered proof that the heaters were not defective, and that the conditions necessary for such an explosion and fire were not present. They also pled arson as an alternative theory for the explosion and fire. The Appellants filed two motions in limine—one to exclude any reference to insurance, and the other to exclude reference to the gambling or draw poker machines located in the facility. The judge granted the insurance motion in limine by written order, following a hearing; however, he reserved his decision on the machines until he heard proof.

The first alleged error occurred during opening statement when the attorney for United referred to "gambling machines." Counsel for the Appellants objected. The court sustained the objection and instructed that no further reference be made to the machines as gambling machines.

The second alleged error occurred during the cross-examination of West End's owner, Ambrose Brewer, by counsel for Rheem, who asked why Brewer had not mitigated his damages by rebuilding. Brewer said he did not have the money. Counsel, in exasperation, asked what he did with the 1.5 million dollars. Appellants' attorneys objected and moved for a mistrial, arguing the question suggested insur-

ance. The judge instructed the Appellees' attorney not to go into the matter further and overruled the mistrial motion.

The Appellants' third assignment of error concerns the charge of defacing an exhibit by Appellees' counsel. During examination of an expert witness, Appellants' counsel created a chart summarizing part of his testimony. On cross-examination, Appellees' counsel took a large blue magic marker and made an "X" over the entire exhibit. The trial judge overruled the Appellants' objection, noting that all information relevant to the testimony of the witness was still readable.

The fourth and final assignment of error concerns the admission into evidence of a police department record of a phone call received by a police dispatcher. According to the record, the anonymous caller said "another bomb would explode at the recreation center." The trial court admitted the record under the Uniform Business Records as Evidence Act, Tenn.Code Ann. § 24–7–111 (1980), over Appellants' objections that the record was hearsay.

Appellants argue that these errors, individually and combined, prejudiced the jurors and warranted a new trial. We disagree, and affirm the jury verdict below.

## MOTION IN LIMINE: REFERENCE TO GAMBLING MACHINES

■ The Appellants filed a written motion in limine in advance of trial to prevent mention of gambling machines during trial testimony; however, no order was entered. On the morning of the trial, after hearing arguments from both sides, the trial judge stated:

THE COURT: Let's do this, Let's reserve everything until I have heard the testimony of Bilbo [arson expert] and the others as to arson or whatever it may be, and then let me look at this and see where we are going.

During opening statement, the tenant's counsel said that his client's business included an arcade housing "poker machines." No objection was made. Rheem's counsel also alluded to the "video machines, poker machines" located in the ten-

ant's arcade. Again, no objection was made. When United's counsel, in his opening statement, referred to "gambling machines," Appellants' counsel objected, and the judge held a bench conference. Appellants' counsel stated that the court had ruled no reference could be made to "gambling machines," and requested a correctional instruction to the jury. The court responded:

THE COURT: I remember saying stay away from it, but it may become relevant later as the proof is developed. I will instruct the jury to disregard it for the time being, that it may or may not become relevant as the proof develops. Okay?

MR. YANCEY [attorney for United]: Very well. All I am saying is I have the right to bring that up at this particular point in time to show some motive for the explosion. That is all I am saying.

THE COURT: The Court can't remember the earlier ruling, but I think I told you to stay away from it until such time as the Court had a chance to look at it and determine.

(WHEREUPON THE BENCH CONFERENCE WAS CONCLUDED)

THE COURT: Ladies and Gentlemen, the last comment made by the attorney, disregard that for the time being. It may or may not become relevant depending on how the proof develops here during the course of the trial, so with that, Mr. Yancey, you may proceed.

Later in the trial, throughout Brewer's cross-examination, both the Appellee's attorney and Brewer made references to "poker machines" and "video machines," without objection. We find the single reference to "gambling machines" in opening statement was not sufficiently prejudicial to affect the jury verdict. This is particularly so in light of later unobjected references to the machines as "poker machines," and in light of the later ruling of the court that the alleged illegality of the poker machines was relevant. To the extent that error may have occurred at that stage, the trial judge's curative instructions to the jury alleviated it. We observe

that counsel, as well as the court, has a duty under Rule 36(a) of Tenn.R.App.P. to prevent error.

## MOTION IN LIMINE: REFERENCES TO INSURANCE

On Appellants' motion in limine in advance of trial, the trial judge prohibited all parties "from any allusion to or mention of insurance or insurance companies that covered the losses suffered by the plaintiffs." At trial, while cross-examining Ambrose Brewer, the owner of West End Recreation, Appellees' counsel asked about the profitability of his business. Mr. Brewer responded his business enjoyed a comfortable profit prior to the explosion and fire. Appellees' counsel asked Mr. Brewer why he did not rebuild the facilities. Mr. Brewer responded that he did not have the money, and counsel immediately responded, "What did you do with the million and a half dollars you received?" Appellants' counsel requested a bench conference immediately thereafter. The record does not reveal the exchange at the conference; however, the court instructed the Appellees' attorney to move on to the next question. At the next recess, the Appellants moved for a mistrial. The court denied the motion and instructed the parties to "stay absolutely away from any reference to any payments, any insurance, anything that even remotely borders on that." When court reconvened the following morning, the trial judge again heard arguments from both sides concerning the motion for mistrial, and declined to give curative instructions.

The rule in Tennessee is "[e]vidence that a defendant is protected by liability insurance from the liability asserted against him is incompetent and inadmissible." *Howard v. Abernathy*, 751 S.W.2d 432, 435 (Tenn. Ct.App.1988) (citations omitted). Where an attorney willfully and voluntarily refers to liability insurance for the purpose of influencing a jury, a mistrial should be granted. *Lovin v. Stanley*, 493 S.W.2d 725, 728 (Tenn.Ct.App.1973). However, "it is more or less a question for the trial court, to exercise his discretion, as to whether or not the plaintiff has deliberately injected the insurance question to the prejudice of the defendant." *McClard v. Reid*, 190 Tenn. 337, 340, 229 S.W.2d 505, 506 (1950).

Based on the record, the attorney's spontaneous allusion to Appellant's receipt of a large sum of money was justified by Appellant's response and, to the extent it suggested insurance, it was, of course, inadmissible. However, insurance was never mentioned and the jury would be required to speculate to reach that conclusion. It was not a willful or deliberate injection of insurance for the purpose of prejudice, and we believe the trial judge appropriately exercised his discretion in handling the issue. Any curative instruction would only have emphasized it. Whether it was serious enough for a mistrial is in the sound discretion of the trial judge. *Newman v. Simmons*, 62 Tenn. App. 610, 466 S.W.2d 506 (1970).

## DEFACING AN EXHIBIT

Appellants' third assignment of error concerns an exhibit offered as a visual aid for the benefit of the jury. During their cross-examination of Appellees' expert witness, Appellants used a chart showing that the explosion characteristics were consistent with a natural gas explosion. Appellants' counsel recorded the expert's responses to the questions on the chart. Appellants then introduced the chart as an exhibit. On re-direct, Appellees' counsel used the same chart to show that the characteristics were common not only to a natural gas explosion, but also to a deliberate explosion. Using a different color magic marker, counsel wrote the witness's responses to the questions on the chart. At the conclusion of the testimony, Appellees' attorney placed a large blue "X" through the middle of the chart. When Appellants' counsel objected, the court commented, "Oh, he hasn't destroyed the content of it. It is still there. Both sides can refer to it." The Appellants later asked for a mistrial as a result of the Appellee's attorney's conduct. The court commented, "he did not destroy the essence and the content of that

particular exhibit, and the court will not grant a mistrial."

We have examined the exhibit and note that all the writing on the chart is still visible. The chart was a visual aid used by counsel to emphasize and dramatize the proof, and not an original evidential exhibit. We agree with the trial court's action and find no error.

## MULTIPLE HEARSAY

The fourth and final assignment of error by the Appellants concerns the admission into evidence of a police department record of a phone call received by a police dispatcher. Pamela Sturm, the police dispatcher, testified that while on duty she received a telephone call from an anonymous caller approximately one hour after the original explosion and fire on the evening of April 5, 1985, and that she completed a record entitled "bomb threat report." According to the record, the caller stated that "another bomb" was about to explode at the West End Recreation site. The record was introduced as a record of the Morristown Police Department.

Appellants objected and argued this testimony by an unidentified declarant took the report out of the business records exception to the hearsay rule, and its admission into evidence was prejudicial error sufficient to warrant a mistrial. Appellees contend it was not offered for the truth of the matter asserted but "to provide rebuttal explanations as to possible causes of the explosion and fire, other than plaintiffs' claim of a product defect." Counsel made no such limited offer, nor did the trial judge limit its introduction in that manner. Moreover, if offered for that purpose, clearly it is still for the truth of the matter asserted.

Hearsay is defined as "testimony in court, or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value on the credibility of the out-of-court asserter." *Bennett v. State*, 530 S.W.2d 788, 792 (Tenn.Crim.App.1975) (quoting E. Cleary, *McCormick on Evidence* § 25 (2d ed.1972)). *See also Laird v.*

*State*, 565 S.W.2d 38, 41 (Tenn.Crim.App. 1978).

The Uniform Business Records as Evidence Act, Tenn.Code Ann. § 24–7–111, provides in pertinent part as follows:

(c) A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness, testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

(1980).

■ The Uniform Business Records as Evidence Act was enacted to provide a broad exception to the hearsay rule to enable litigants to introduce and use business records without calling the numerous witnesses who were involved in preparing or keeping them. *Graham v. State*, 547 S.W.2d 531, 583 (Tenn.1977). However, the Act does not render all business records admissible. It gives the trial judge the discretion to determine whether the particular record sought to be introduced is sufficiently trustworthy to be admitted. The trustworthiness of a record is determined by considering the source of the information contained in the record as well as the time and the manner in which the record was prepared.

■ In order for the police record to be admissible to prove the truth of the statements contained therein, each statement, standing on its own, must be admissible. In McCormick's treatise on evidence, the problem of the admissibility of multiple hearsay statements is discussed and a two-tier approach is suggested. *See Butler v. Ballard*, 696 S.W.2d 533, 536–37 (Tenn.Ct. App.1985).

The first inquiry is whether the primary statement qualifies under a hearsay exception. The primary statement in this case, the police record, qualifies as a business record under Tenn.Code Ann. § 24–7–111(c) because it was regularly prepared in the course of business at or near the time of the act by a qualified witness.

The next inquiry is whether the secondary statement contained in the business record fits within one of the exceptions to the hearsay rule. The editor, Professor Cleary, has noted that if the included statement is by a person acting in the routine of the business, the regularly kept records exception takes care of the matter and no further exception need be invoked. However, if the person whose statement is included is not in the routine of the business, resort must be had to be a further exception. E. Cleary, *McCormick on Evidence* § 324.3 (3d ed.1984). Thus, the anonymous caller's statement can be used to prove the truth of what he asserts only if he was acting in the routine of business when he made it or if it qualifies under another exception to the hearsay rule.

In his treatise on evidence, Professor Paine discusses the business records exception:

When the informant-declarant is not under a business duty to give information, the business entry exception is insufficient to get the statement into evidence. A typical example is a police report wherein the investigating officer writes in statements of bystanders; the report can be introduced by a custodian of police records to prove the bystander made the statement but not to prove the statement is true. [*U.S. v. Graham,* 391 F.2d 439 (6th Cir.1968)]

D. Paine, *Tennessee Law of Evidence,* p. 89, § 79 (1974).

A more recent case addressing the admission of business records is *Butler v. Ballard,* 696 S.W.2d 533 (Tenn.Ct.App. 1985). In *Ballard,* the plaintiff sought to exclude references from an unidentified source in a hospital record to the plaintiff's earlier use of marijuana and alcohol. The Court, citing *Graham v. State,* 547 S.W.2d 531 (Tenn.1977), noted that business records should be used when the matters sought to be established are routine or uncontroverted. Business records are not vehicles wherein any and every statement recorded will qualify as admissible evidence. *Id.* An unidentified informant's comments are hearsay and are allowed only if the comments fall within another exception. *Id.* The hearsay in the *Ballard* case did not fall within a hearsay exception, nor does the record of the bomb threat report qualify under an exception. Accordingly, the admission of the police department record as a business record was error.

■ According to Rule 36(b) of the Tennessee Rules of Appellate Procedure, a judgment "shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." *Blackburn v. Murphy,* 737 S.W.2d 529, 533 (Tenn.1987). The trial lasted twelve days and substantial evidence existed to support the jury verdict which was approved by the trial judge. We conclude this error did not affect the verdict so as to require the judgment to be set aside.

Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are taxed to the Appellants.

GODDARD and FRANKS, JJ., concur.