**STATE of Tennessee, Appellee,**

v.

**Johnny RUCKER, Appellant.**

Court of Criminal Appeals of Tennessee,
at Jackson.

July 29, 1992.

Charles W. Burson, Atty. Gen. and Reporter, Rose Mary Drake, Asst. Atty. Gen., Nashville, John W. Pierotti, Dist. Atty. Gen., James C. Beasley, Jerry Kitchen, Asst. Dist. Attys. Gen., for appellee.

Walker Gwinn, Asst. Public Defender (appeal only), S. Delk Kennedy, Asst. Public Defender (trial only), John Curtis, Asst. Public Defender (trial only), Memphis, A C Wharton, Jr., Shelby County Public Defender, of counsel), for appellant.

## OPINION

JONES, Judge.

The appellant, Johnny Rucker, was convicted of aggravated rape, a Class A felony, by a jury of his peers. The trial court found that the appellant was a standard offender and imposed a Range I sentence of twenty (20) years in the Department of Correction.

The appellant contends that the trial court committed error of prejudicial dimension in permitting the State to introduce statements made by the victim's mother to a nurse in the emergency room of a hospital, a nurse practitioner who was called to examine the victim, and a social worker employed by the hospital.

The judgment of the trial court is reversed; and this cause is remanded to the trial court for a new trial for the reasons set forth in this opinion.

## I.

During the early morning hours of November 15, 1989, the victim's mother heard a noise and went to investigate. As she exited the bedroom, she encountered her daughter, the victim, and her husband, the appellant, in the hallway adjacent to the bedroom. She heard the appellant ask the victim what was wrong with her. The mother then asked the same question to the victim. The victim told her mother that "Daddy's been messing with me." She indicated that the appellant had "been messing with" her rectum. The mother examined her daughter and found blood in her panties.

The victim's mother noticed blood on the appellant's pants while in the hallway. According to the mother, the appellant periodically bled from the tip of his reproductive organ and his urine contained blood. She explained that the blood on his pants was not wet. However, when she questioned the appellant about the blood, he pulled at his pants.

The victim testified that on the evening in question she left her residence to visit friends without the permission of her parents. John, who was also visiting with the victim's friends, walked the victim home. John forced the victim into a van parked at her residence and raped her. After entering the residence, the victim was afraid to tell her mother that John had raped her. She was afraid her mother would punish her because she had left the residence without permission. The victim accused the appellant of the rape to avoid being punished. The victim thought nothing would happen to the appellant if she blamed him.

The State introduced prior inconsistent statements to impeach the victim. She had told a police officer that she awoke to find her clothing around her knees and the appellant attempting to insert his reproductive organ into her rectum.

The victim's mother took the victim to a children's hospital. There were nurses and a physician on duty in the emergency room that examined and treated the victim. The victim did not make a statement to the emergency room nurse. The victim's mother told the nurse shortly after arriving at the hospital:

[Mom] woke up from sleep by hearing noise. Mom went to kitchen, then bathroom. Looked in on child in living room and saw husband (Johnny Rucker) jump up from where the child was lying, pulling his pants up. Mom noticed blood on husband's pants. Child ran to bathroom. Mom confronted husband, then checked on child. Mom noticed 2 spots of blood on back of child's pants. Mom asked child if he (husband) 'messed' with her— child said yes. History told per mom. Child changed clothes since incident but has not voided. Respiration is even and unlabored. Heart: regular rhythm. Skin: warm and dry. Color: pink.

A nurse practitioner employed by the Memphis Sexual Assault Resource Center examined the victim at the hospital. This agency examines sexually abused victims

at the request of the Tennessee Department of Human Services and law enforcement agencies. Normally, the examination is performed at the Center. However, when a sexually abused victim seeks treatment at a hospital, the hospital is required to report such incidents to a law enforcement agency. The examination is performed to determine whether the victim has been sexually abused, obtain and test samples taken from the victim, preserve evidence of the sexual abuse, and to have an informed, experienced person available to testify at the trial of the perpetrator.

The victim's mother told the nurse practitioner:

> Mother said that she heard a noise and went through the house and saw a known male get up, fumble with his zipper. Mother saw blood on his pants and checked her daughter and saw blood on the child and also on her clothes.

The examination by the nurse practitioner revealed that the victim's vagina and rectum had been penetrated.

The victim's mother told a social worker employed by the hospital:

> *Problem Development:* Mother states she awoke about 2:30 a.m. when she heard a noise. She went into patient's bedroom to find father getting out of bed w/[victim] zipping up his pants. Father had blood on his pants. [Victim] told her mother that her father had hurt her. Child presented to the E.R. with rectal pain and bleeding.
>
> *Pertinent Social Information:* Household consists of mother Gloria Rucker, 37y and her three children ... Mother is separated from her husband John Rucker, 42y. She says he has a key to the house and comes and goes at will. She has talked to the police prior to this incident, as she did not want him to come around....

The nurse practitioner testified as a witness for the State. The medical histories given to the emergency room nurse and the social worker were contained in the hospital's records. These two statements were read into the record by the medical records librarian of the hospital.

The assistant district attorney general advised the trial court that the State sought the admission of the two statements contained in the hospital records to establish that "the mother and daughter have previously given statements that we allege are the actual facts in the case." At another point the assistant district attorney general advised the trial court that the statements were being offered as "substantive evidence, not for impeachment purposes. These are exceptions to the hearsay rule, which we submit are admissible into evidence not as hearsay, but are admissible into evidence which would make them substantive evidence." Later, the assistant district attorney general told the trial court that the purpose of the records was "to bolster the case."

The two statements were introduced as substantive evidence. The trial court stated in ruling: "The Court will allow that in, allow the testimony as to those particular statements in [sic] based on the medical records' exception."

## II.

▮ Hospital records are admissible pursuant to the records of regularly conducted activity exception to the hearsay rule if the party offering the records can establish a proper predicate for their admission. Tenn.R.Evid. 803(6); N. Cohen, D. Paine, and S. Sheppeard, *Tennessee Law of Evidence*, Section 803(6).11 (2nd ed. 1990). Rule 803(6), Tenn.R.Evid., provides:

> A memorandum, report, record, or data compilation in any form of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "busi-

ness" as used in this paragraph includes every kind of business, institution, association, profession, occupation, and calling, whether or not conducted for profit.

■ The mere fact that documents are admissible as evidence pursuant to Rule 803(6), Tenn.R.Evid., does not mean that every entry contained in the documents can be admitted into evidence. *Kanipes v. North American Phillips Electronics Corp.,* 825 S.W.2d 426, 428 (Tenn.App. 1991). *See West End Recreation, Inc. v. Hodge,* 776 S.W.2d 101, 105–106 (Tenn.App. 1989); *State v. Allen,* 692 S.W.2d 651, 653 (Tenn.Crim.App.1985). Thus, some entries contained in hospital records cannot be admitted into evidence simply because the records are admissible pursuant to the rule. *See Graham v. State,* 547 S.W.2d 531, 539 (Tenn.1977); *Butler v. Ballard,* 696 S.W.2d 533 (Tenn.App.1985); *Ledford v. State,* 568 S.W.2d 113 (Tenn.Crim.App.1978).

■ The medical history contained in the hospital records was not admissible as evidence pursuant to the records of regularly conducted activity exception embodied in Rule 803(6). *Butler v. Ballard, supra. See Petrocelli v. Gallison,* 679 F.2d 286 (1st Cir.1982). The history was considered double hearsay because it was made to a person who then placed the hearsay in the records. In this case the history consisted of double and triple hearsay as the victim related some of the history to her mother, the mother related what the victim supposedly told her and what she observed to the emergency room nurse and the social worker, and these two individuals placed the mother's statement in the hospital records. In addition, the declarant, the mother, was not under a duty to transmit the information to either the nurse or the social worker. The rule provides that the information contained in a document must be transmitted "by a person with knowledge and a business duty to … transmit" it. Tenn. R.Evid. 803(6).

This does not mean that the statements made to the emergency room nurse and the social worker were inadmissible as a matter of law. To the contrary, the medical history may be introduced into evidence if it falls within the purview of another exception to the hearsay rule. *See Butler v. Ballard,* 696 S.W.2d at 539.

## III.

■ Statements made for the purpose of medical diagnosis and treatment are admissible as an exception to the hearsay rule. Rule 803(4), Tenn.R.Evid., provides:

Statements made for purposes of medical diagnosis and treatment describing medical history; past or present symptoms, pain, or sensations; or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis and treatment.

As can be seen, there are three prerequisites that must be met before such statements are admissible pursuant to this exception. It must be established that the statement (a) was made for the purpose of medical diagnosis *and* treatment, (b) described the medical history of the declarant, *i.e.,* past or present symptoms, pain, sensations, and the general character of the cause or source thereof, and (c) was reasonably pertinent to diagnosis and treatment.

The statements given by the victim's mother raise several interesting questions. The threshold question in this case must be: is a medical history given to a health care provider by a third person, *i.e.* a parent of the patient, admissible pursuant to this exception when the statements were made for the purpose of diagnosis and treatment of the child? The second question raised by the facts is: were the statements given for the purpose of both diagnosis and treatment? The third question raised by the facts is: was the information contained in the statement "reasonably pertinent to diagnosis and treatment?"

## IV.

■ As a general rule, the person seeking treatment provides the health care provider with the medical history. However, Rule 803(4) does not bar the admission of a medical history related to a health care provider by a third person, particularly a parent or a grandparent. N. Cohen, D.

Paine, and S. Sheppeard, *Tennessee Law of Evidence*, Section 803(4).5 (2nd ed. 1990); Strong, *McCormick on Evidence*, Section 277 (4th ed. 1992). *See, e.g., Mendez v. United States*, 732 F.Supp. 414 (S.D.N.Y. 1990) (grandparent's statements regarding child's health); *Welter v. Bowman Dairy Co.*, 318 Ill.App. 305, 47 N.E.2d 739 (1943) (parent's statement regarding infant's health). The rationale for this rule is the third person's desire to (a) obtain medical assistance for the patient and (b) make sure that the diagnosis made and treatment provided by the health care provider is accurate so that the patient will recover from the illness or injuries sustained as quickly as possible.

This Court concludes that the statements made by the victim's mother outlining what she observed are admissible if the remaining requirements have been satisfied. The statement made by the victim to her mother is also admissible if the statement falls within the purview of another exception to the hearsay rule.

## V.

■ Statements made to a health care provider are only admissible if made "for purposes of medical diagnosis *and* treatment." Tenn.R.Evid. 803(4). (Emphasis added). The Advisory Commission Comment to the rule states: "The proposal [rule] continues the Tennessee position of limiting declarations of past physical condition to those made to treating doctors.... The declaration must be for *both diagnosis and treatment.* " (Emphasis added). The term "diagnosis", as used in this rule, refers to a diagnosis made for the purpose of determining what course of treatment should be prescribed for the patient.

The statement made to the emergency room nurse was for the purpose of diagnosis and treatment. The victim's mother related what she had been told and what she observed so that the medical personnel would know what happened, these individuals could make an accurate diagnosis, and her daughter could receive treatment for the injuries she sustained at the hands of the person who raped her.

The record reflects that the victim arrived at Le Bonheur Children's Medical Center at 3:32 a.m. The emergency room nurse took the history from the victim's mother and obtained the victim's vital signs to aid the staff physician in making his diagnosis and treating the victim's physical injury. A staff physician examined the victim; and he prescribed treatment for the victim while she was in the emergency room and when she was discharged at 6:25 a.m. The hospital also obtained a blood sample, swabbed the victim's orifices, and prepared cultures. Hospital personnel tested the cultures and prepared reports of their findings.

■ The statement attributed to the victim, *i.e.*, "Mom asked child if he (husband) 'messed' with her—child said yes," was admissible as an excited utterance. Tenn. R.Evid. 803(2). The statement was made almost immediately after the victim was raped. The rape certainly must be considered "a startling event or condition," and, due to the timing, "the declarant was under the stress of excitement" after having just been raped. Tenn.R.Evid. 803(2). Thus, this statement was admissible as part of the mother's statements to the emergency room nurse.

■ The nurse practitioner was not a member of the hospital's staff. As an assistant district attorney general told the trial court at a jury-out hearing: "Pat Speck [the nurse practitioner] does her own thing for Rape Crisis' purposes and not for Le Bonheur." She did not arrive at the hospital until 5:30 a.m. after being notified by the appropriate agency. She conducted a forensic examination of the victim's orifices to determine whether the victim had been sexually penetrated. There is nothing in the record to indicate that the nurse practitioner diagnosed the victim for the purpose of treatment or that she actually treated the victim. Furthermore, the record does not establish that the victim's mother made the statement to the nurse practitioner for the purpose of diagnosis and treatment; and this Court cannot presume this fact. Moreover, the victim's mother had given a detailed history to the

emergency room nurse shortly after she arrived at the hospital; and the emergency room nurse and staff physician had treated the victim for two hours before the nurse practitioner arrived. The mother also made a statement to the social worker approximately one hour after she arrived at the hospital. Consequently, there was no reason for the mother to make a third statement to the nurse practitioner for the purpose of diagnosis and treatment when she was vividly aware that her child had been diagnosed and was already receiving treatment.

In the context of this case, the trial court abused its discretion in permitting the nurse practitioner to tell the jury what the victim's mother told her after she arrived at the hospital.

■ The trial court also abused its discretion in permitting the medical records librarian to read what the victim's mother told the social worker. First, the librarian did not know what role the social worker played on the morning in question. Second, it is obvious that the social worker's role was to obtain the family's social history. Third, the social worker, as a fact finder for documenting the hospital's records, would not have played any part in determining whether the child should return to the Rucker residence. A Memphis police officer, who was assigned to the child abuse section, was present at the hospital and took his own statements from the witnesses. Also, a Department of Human Services representative was present at the hospital and took independent statements from the witnesses. Any decision regarding the welfare of the child would have been made by the Department of Human Services' representative, not the social worker. Consequently, the social worker did not diagnose or play a part in the treatment of the victim. Tenn.R.Evid. 803(4).

■ There is another reason why the statement to the social worker was not admissible. The record does not establish that the victim's mother made the statement to the social worker for the purpose of diagnosis and treatment; and this Court cannot presume this fact. As previously stated, the victim's mother had given a detailed history to the emergency room nurse shortly after she arrived at the hospital; and the emergency room nurse and staff physician had treated the victim for an hour before the social worker interviewed the victim's mother. Thus, there was no reason for the mother to make a second statement to the social worker for the purpose of diagnosis and treatment when her child was already receiving treatment. The statement was not admissible pursuant to any other exception to the hearsay rule.

## VI.

The issue as to whether the content of the statement made to the emergency room nurse was "reasonably pertinent to diagnosis and treatment" presents a complex question.

■ The first subject this Court must address is whether the name or identity of the person who raped the victim was "reasonably pertinent to diagnosis and treatment."

As a general rule, the name and identity of the perpetrator is not considered "reasonably pertinent to diagnosis and treatment." *See, e.g., United States v. Iron Shell*, 633 F.2d 77 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981) (identity "very rarely" admissible); *People v. Pluskis*, 162 Ill. App.3d 449, 113 Ill.Dec. 671, 515 N.E.2d 480 (1987); *People v. LaLone*, 432 Mich. 103, 437 N.W.2d 611 (1989); N. Cohen, D. Paine, & S. Sheppeard, *Tennessee Law of Evidence*, Section 803(4).4 at 426–427 (2nd ed. 1990). Thus, if the perpetrator is identified in the medical history, that portion of the medical history should be excised before it is admitted into evidence. However, several courts have developed an exception to this rule. These courts have held that the name or identity of the perpetrator is "reasonably pertinent to diagnosis and treatment" in child sexual abuse prosecutions when the perpetrator is a member of the victim's immediate household. *See,*

*e.g., United States v. Renville,* 779 F.2d 430 (8th Cir.1985); *State v. Robinson,* 153 Ariz. 191, 735 P.2d 801 (1987) (En Banc); *State v. Maldonado,* 13 Conn.App. 368, 536 A.2d 600 (1988); *State v. Altgilbers,* 109 N.M. 453, 786 P.2d 680 (N.M.App.1989); *State v. Nelson,* 138 Wis.2d 418, 406 N.W.2d 385 (1987); *Goldade v. State,* 674 P.2d 721 (Wyo.1983), *cert. denied,* 467 U.S. 1253, 104 S.Ct. 3539, 82 L.Ed.2d 844 (1984); N. Cohen, et al., *Tennessee Law of Evidence,* Section 803(4).4 at 426–427; 23 C.J.S. *Criminal Law,* Section 875 at 77 (1989).

In *Renville,* "the victim recounted acts of anal intercourse and cunnilingus performed by Renville" when she was examined by a medical doctor. When the victim testified at Renville's trial she recanted the statements made to the doctor. The doctor was permitted to testify that the victim told him about the acts of anal intercourse and cunnilingus performed by Renville. The Eighth Circuit Court of Appeals ruled that the victim's statement to the physician was admissible. In ruling, the court said:

> We believe that a statement by a child abuse victim that the abuser is a member of the victim's immediate household presents a sufficiently different case from that envisaged by the drafters of rule 803(4) that it should not fall under the general rule. Statements by a child abuse victim to a physician during an examination that the abuser is a member of the victim's immediate household are reasonably pertinent to treatment.

779 F.2d at 436.

Several jurisdictions have either adopted *Renville* or its rationale. *See State v. Robinson, supra; State v. Maldonado, supra; State v. Larson,* 453 N.W.2d 42, 47 (Minn. 1990); *State v. Altgilbers, supra; State v. Aguallo,* 318 N.C. 590, 350 S.E.2d 76 (1986); *State v. Nelson, supra; Goldade v. State, supra.* The authors of the treatise *Tennessee Law of Evidence,* recognize the holding in *Renville* and suggest that it is the proper rule to follow. N. Cohen, et. al., *Tennessee Law of Evidence,* Section 803(4).4 at 426–427.

*Renville* and its progeny have advanced several reasons as to why the identity of the perpetrator is "reasonably pertinent to diagnosis and treatment." The Eighth Circuit Court of Appeals reasoned that statements regarding the identity of the perpetrator in child abuse cases are reasonably relied on by a physician when diagnosing and treating the child. According to the court, physicians must be attentive to treating both the physical injuries and the emotional and psychological injuries which accompany such crimes. "The exact nature and extent of the psychological problems which ensue from child abuse often depend on the identity of the abuser." 779 F.2d at 437. Also, "physicians have an obligation, imposed by state law, to prevent an abused child from being returned to an environment in which he or she cannot be adequately protected from recurrent abuse. This obligation is most immediate where the abuser is a member of the victim's household...." 779 F.2d at 438. The decision has to be made as to whether the child should be removed from the household. *See,* e.g., Tenn.Code Ann. § 37–1–605 (1991).

The courts which have adopted *Renville* or its rationale recognize that "there is a direct correlation between identity and recurrence" as most child abuse cases "often reveal a pattern of continued abuse by the same perpetrator." *State v. Maldonado,* 536 A.2d at 603. Thus, identity "is often necessary to diagnose the extent and likelihood of further harm to the victim," *Maldonado, id.,* as well as "to facilitate recovery from past abuse." *State v. Robinson,* 735 P.2d at 810. In summary, the "psychological sequelae of sexual molestation by a father ... may be different and require different treatment than those resulting from abuse by a stranger." *Robinson, id.*

Some jurisdictions have rejected *Renville* or the exception to the rule it created. *See, e.g., People v. LaLone, supra; People v. Pluskis, supra.*

This Court is of the opinion that "[s]tatements made by a child abuse victim to a physician during an examination that the abuser is a member of the victim's immedi-

ate household are reasonably pertinent to treatment" for the reasons set forth in this opinion. *United States v. Renville,* 779 F.2d at 436. Moreover, the rule should be applied in this case. While the victim's mother and the appellant were supposedly separated when the victim was raped, the appellant had access to the residence where the victim lived at all hours of the day and night. He went to the residence unannounced, stayed as long as he desired, and left whenever he took the notion. His wife testified that he came to the residence late "several times a week;" and he was living with the family when the trial commenced. Based on these circumstances, the appellant must be considered an immediate member of the same household as the victim; and his identity was properly revealed since it was "reasonably pertinent to diagnosis and treatment." Tenn.R.Evid. 803(4).

■ What the victim's mother saw when she viewed the living room area of the residence was also "reasonably pertinent to diagnosis and treatment." Tenn. R.Evid. 803(4); N. Cohen, et al., *Tennessee Law of Evidence,* Section 803(4).4 at 426–427. This information advised the health care providers that the victim had been sexually abused, the father, an adult, was the likely perpetrator, and that one or more of the victim's orifices had been penetrated by the culprit.

■ However, the trial court should have excised from the statement what was not "reasonably pertinent to diagnosis and treatment." The statement should have been redacted to read:

> [Mom] woke up from sleep by hearing noise. Mom went to kitchen then bathroom. Looked in on child in living room and saw husband (Johnny Rucker) jump up from where the child was lying, pulling his pants up.... Child ran to bathroom.... Mom noticed 2 spots of blood on back of child's pants. Mom asked child if he (husband) 'messed' with her—child said yes. History told per mom.

The excised facts, *i.e.,* "Mom noticed blood on husband's pants" and "Mom confronted husband then checked on child" were not "reasonably pertinent to diagnosis and treatment."

## VII.

■ This Court concludes that the error made by the trial court "more probably than not" affected the judgment in this case; and this case must be reversed and remanded for a new trial. Tenn.R.App.P. 36(b).

The substantive evidence contained in the record, absent the statements to the nurse practitioner and the social worker, was far from overwhelming. The mother recanted what she allegedly saw in the living room, *i.e.,* the victim was lying on the floor, the appellant was kneeling next to her, and the appellant was pulling his pants up as he arose from the floor. The victim also recanted what she supposedly told her mother, the police officer, and the social workers that talked to her. She testified that she was raped by a young male eighteen years of age, not her father. The State introduced evidence to impeach both witnesses.

The statements to the nurse practitioner and the social worker were highly prejudicial. The State agreed that the statements were prejudicial. The sole purpose for admitting this evidence was to bolster its case against the appellant. It is obvious from the record that the State, stating that the content of the statements reflected what actually happened on the morning in question, sought to substitute the three statements made by the mother for the live testimony given by the victim and the mother from the witness stand.

DWYER and WADE, JJ., concur.