IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 27, 2001

**STATE OF TENNESSEE v. KENNETH CHAMBLY**

**Appeal from the Criminal Court for Hamilton County**
**Nos. 226662, 226621, 226622     Douglas A. Meyer, Judge**

---

**No. E2000-01719-CCA-R3-CD**
**September 7, 2001**

---

The defendant, Kenneth Chambly, appeals his convictions for three charges of aggravated sexual battery for which he received an effective sentence of ten years without parole. He raises various issues on appeal. We reverse the convictions and remand the case for a new trial because of the failure of the state to elect offenses and the failure of the trial court to instruct the jury regarding the need for offense unanimity in the verdict. We also conclude that the trial court imposed an improper sentence of ten years for one of the convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Reversed; Case Remanded**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROBERT W. WEDEMEYER, JJ., joined.

Ardena J. Garth, District Public Defender, and Donna Robinson Miller, Assistant District Public Defender (on appeal and on motion for new trial), and James F. Logan, Jr., Cleveland, Tennessee (at trial), for the appellant, Kenneth Chambly.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; William H. Cox, III, District Attorney General; and Kelli Black, Dara Draper, and Rodney C. Strong, Assistant District Attorney Generals, for the appellee, State of Tennessee.

**OPINION**

This case involves Martin and Judith Griswold's daughters: twins who were about eight and a third who was about six years old when the incidents in issue occurred. The defendant, a friend of Mr. Griswold's, was convicted of one count of aggravated sexual battery, a Class B felony, for each daughter, and he received concurrent sentences of eight years, ten years, and eight years, respectively. The defendant raises the following issues in this appeal:

(1) The trial court erred in failing to require the state to elect and identify the specific offenses for which it sought convictions;

(2) the trial court erred in consolidating the three separate charges for trial;

(3) the trial court erred in admitting out-of-court statements made by the children to a Child Protective Services worker and to a medical doctor;

(4) the trial court erred in allowing the trial to proceed when the state failed to provide exculpatory evidence;

(5) the state made improper closing argument; and

(6) the trial court erred in its application of enhancement and mitigating factors for sentencing.

The indictments allege that the offenses occurred in the month of January 1998. The proof related to the times that the defendant visited the Griswolds' house. The three daughters, ten and eight at the time of trial, testified regarding "bad touches" by the defendant, although a lot of their testimony was rather unclear. One twin testified that the defendant touched her "private" in front on top of her clothes, rubbing his hand up and down. The state's questioning was geared toward showing that this occurred in the living room. The twin then testified that the defendant's bad touches occurred in her room, her sister's room and at the defendant's truck, although she later explained that the defendant kissed her at his truck. Upon the state's reminder about the living room, she testified that the defendant would put a blanket over her and her sisters in front of her father, who would be watching television. On cross-examination, the victim said that nothing happened in the living room. On redirect examination, she said that, at least twice, the defendant put a blanket over her lap in the living room and "would try to touch" her "private." On recross-examination, she said that the defendant "tried to touch" her "private" twice in the bedroom and twice in the living room.

The second twin, who has cerebral palsy and a speech impediment, gave very little testimony, but not from lack of effort by the state. Of substance, she said that the defendant touched her rear end as a bad touch. She said the defendant had given her bad touches but said she did not remember where. Then she said that the defendant touched her with his hand on top of her clothes "in rear end, front." The first twin testified that she saw the defendant touch her twin sister twice in her sister's room. Dr. Donna Lett testified that the second twin told her that the defendant had rubbed her in the area the doctor described as the pubic area.

The youngest daughter testified that the defendant touched her in the living room in the "wrong place" where she goes to the bathroom, but she said she did not remember if it was on top of or under her clothes. She said it happened more than once while the defendant was on the couch.

She did not remember how many times or what was done, but she recalled it being done during the day. The first twin testified that she had seen the defendant touch her younger sister in her front "private" in her sister's bedroom. She said she saw him touch her sister five times. Celeste Caroland, a friend of Ms. Griswold, testified about seeing the defendant's hand inside the back of the youngest daughter's underwear while the child was sitting on his lap on the couch in the living room.

## ELECTION OF OFFENSES

The defendant contends that the trial court erred by not requiring the state to elect the particular offenses proven for which it sought convictions. He notes that the trial court did not instruct the jury specifically regarding the need for juror unanimity as to the same offense for conviction purposes. The state responds that the state "repeatedly and consistently identified" the defendant's sexual batteries as occurring around January 21, 1999. It notes the state's opening remarks to the effect that it expected to prove the offenses occurred in the living room while the victims' father was in his recliner chair in the living room. The state also points to Ms. Caroland's testimony regarding the youngest daughter and the state's specific reference to this event in its closing argument. The state asserts that the foregoing shows that the state did not rely on "bad touches" elsewhere.

We do not believe that the record is as clear as the state would have us believe. First, it is telling that the state essentially concedes that more than one offense per victim was proven, and we note that it did not expressly tell the jury upon what offenses it relied to seek convictions. In fact, during discussions regarding whether the victims' testimony was inconsistent as to the location of the offenses, the state said that it was for the jury to determine the truth as to location. Moreover, we note that in closing argument, the state argued relative to the offenses that "[w]hether it happened in the living room or whether it happened in the bedroom, we know it happened in January of 1999." This statement leaves open the question of what conduct constituted the offenses and when and where they were committed. Also, the state does not address the significance of the trial court's failure to instruct the jury regarding jury unanimity.

The courts of this state have repeatedly held that when evidence is presented of multiple offenses that would fit the allegations of the charge, the trial court must require the state to elect the particular offense for which a conviction is sought and must instruct the jury as to the need for jury unanimity regarding the finding of the particular offense elected. See, e.g., State v. Brown, 762 S.W.2d 135, 137 (Tenn. 1998); State v. Walton, 958 S.W.2d 724, 727 (Tenn. 1997); State v. Shelton, 851 S.W.2d 134, 136 (Tenn. 1993); Burlison v. State, 501 S.W.2d 801, 804 (Tenn. 1973). The central purpose of these procedures is to ensure against a patchwork verdict in which some jurors find guilt as to one offense while other jurors find guilt as to a separate offense. Shelton, 851 S.W.2d at 137. Also, the requirement of election and a jury unanimity instruction exists even though the defendant has not requested them. See Burlison, 501 S.W.2d at 804. Moreover, failure to follow the procedures is considered to be of constitutional magnitude and will result in reversal of the

conviction absent the error being harmless beyond a reasonable doubt.  See, e.g., Shelton, 851 S.W.2d at 138.

In viewing the evidence, we do not believe that the record lends itself to a conclusion, beyond a reasonable doubt, that the jury's verdicts resulted from each juror's considering and finding the existence of one particular offense against each victim to which all other jurors agreed.  Multiple offenses, multiple dates, and multiple locations were proven.  Without election and proper instruction, each juror was left to choose for him or herself the acts upon which to reach verdicts.  Under the circumstances, this constitutes reversible error.

## CONSOLIDATION

The defendant contends that the trial court erred in consolidating the cases for trial.  He argues that proof of the offenses against each of the victims would not be admissible against the defendant in separate trials regarding the other victims.  The state responds that the issue is waived because the record does not show that the defendant objected to consolidation or requested a severance.  We agree with the state.

The defendant advised the trial court of a "technical matter" relative to the fact that the state had not made a motion to consolidate.  He noted that the overlapping testimony would lead the trial court to grant such a motion.  However, he referred to a previous case in which a question about ineffective assistance of counsel was raised because no motion to consolidate had been made.  The prosecutor stated that counsel had previously discussed having the cases consolidated and that the defense had not objected.  The trial court then summarily ordered consolidation, treating the prosecutor's comments as a motion.

We do not believe the defendant's actions to be sufficiently specific as to preserve the issue of improper consolidation.  It is obvious that the trial court and the state thought that the defendant was focused upon the formality of a motion, not its substance.  We believe such to be a reasonable interpretation of the defendant's comments.  If the defendant objected to consolidation, he was required to state the specific ground for his objection.  See Tenn. R. Evid. 103(a)(1).  This we presume he did when he called the motion a "technical matter."  However, he did not put the trial court on notice regarding a substantive objection to consolidation.  Moreover, he did not move to sever the cases during the trial.  We conclude that the issue of consolidation has been waived.

## OUT-OF-COURT STATEMENTS

The defendant complains about the trial court's admitting into evidence out-of-court statements by the victims.  He first refers to testimony by the first twin and a Child Protective Services worker, Lisa Barrett, that related to the victims' telling others, including their mother and Ms. Barrett, about the defendant's conduct.  The defendant correctly notes that when the victim of a sexual assault is a child, neither the fact that the child complained to another person nor the details of the complaint may be admitted under the doctrine of fresh complaint.  See State v. Livingston,

907 S.W.2d 392, 395 (Tenn. 1995). The state acknowledges that Livingston "appears to deny admissibility to the fact of a complaint as well as the details of the complaint." However, it notes that the defendant did not object when the first twin testified about telling her mother. The state also contends that any error was harmless. We agree that the defendant's failure to object to the first twin's testimony not only waives the defendant's claim as to that evidence, but it also reduces the risk of harm relative to Ms. Barrett indicating that the victims complained about the defendant. Under the circumstances in this case, any error in admitting out-of-court statements by the victims relative to the defendant's conduct was harmless. See T.R.A.P. 36(b).

Second, the defendant complains about the trial court's allowing Dr. Donna Lett, a physician who examined the victims, to testify that each of the victims told her that the defendant touched them in the pubic or buttocks area. He argues that the testimony constituted inadmissible hearsay. The state argues that Dr. Lett was examining the victims for diagnosis and treatment purposes, which provides a foundation for admitting the victims' statements to her as an exception to the hearsay rule of exclusion. Under Rule 803(4), Tenn. R. Evid., statements describing medical history that are made for purposes of medical diagnosis and treatment and that are reasonably pertinent to such diagnosis and treatment are admissible. The defendant responds that the victims' naming him as the perpetrator was not reasonably pertinent to diagnosis and treatment. He relies upon State v. Rucker, 847 S.W.2d 512, 518 (Tenn. Crim. App. 1992), which he claims held that the identity of the perpetrator is not considered reasonably pertinent to diagnosis and treatment except when the perpetrator is a member of the victim's immediate household. He also argues that there are insufficient indicia of the victims' proper motivations regarding treatment to ensure trustworthiness of their statements to Dr. Lett.

We do not believe that Rucker necessarily stands for the proposition claimed by the defendant. In Rucker, this court was confronted with a defendant who was convicted of raping his daughter. It concluded that "'[s]tatements made by a child abuse victim to a physician during an examination that the abuser is a member of the victim's immediate household are reasonably pertinent to treatment' . . . ." 847 S.W.2d at 519-20 (quoting United States v. Renville, 779 F.2d 430, 436 (8th Cir. 1985)). However, we do not believe that Rucker means that members of the victim's immediate household are the only ones that meet the requirements of Rule 803(4). As Rucker reflects, the identity of the abuser in a child abuse case is relevant to diagnosis and treatment because the exact nature and extent of emotional and psychological injuries and of the risk of recurrent abuse often depend upon the identity of the abuser. 847 S.W.2d at 519. Obviously, the risk of continuing harm is high and immediate when the abuser lives with the victim. However, the presumed reliability under Rule 803(4) of the victim's statement to a doctor about the abuser's identity does not vanish solely because the victim identifies a stranger to the household as the abuser. The interests of the doctor for diagnosis and treatment to know the abuser's identity and the purpose of the victim's telling the doctor the abuser's identity – the foundation upon which Rule 803(4) is based – remain the same regardless of whom the victim identifies. Moreover, as the evidence in the present case shows, a child may be the victim of recurrent abuse by persons who are not members of the victim's immediate household. We conclude that the victims' statements to Dr. Lett

identifying the defendant as their abuser have been shown to be reasonably pertinent to diagnosis and treatment.

The defendant also contends that the Rule 803(4) exception does not apply in this case because there is insufficient evidence of the victims' being motivated to tell Dr. Lett the identity of their abuser in aid of the doctor's attempt to diagnose and treat them. The state responds that the totality of the circumstances reflect that the victims' statements to Dr. Lett "clearly indicate that they were made for the purposes of diagnosis and treatment and were not solicited [or] coaxed." See State v. McLeod, 937 S.W.2d 867, 871 (Tenn. 1996) (stating that all of the circumstances surrounding the statement should be examined for the admissibility decision). Under McLeod, we agree with the state's position. Dr. Lett testified in detail to the procedures used with the victims to prepare them for physical examinations, including familiarizing them with the equipment that would be used. Also, she testified about explaining to the children why she was examining them. We conclude that the evidence sufficiently reflects that the victims' statements to Dr. Lett were for the purpose of receiving medical assistance.

We must also note, though, that the defendant was aided by a limiting instruction to the jury. As exceptions to the hearsay rule exclusion, the victims' statements were to be received as substantive evidence and given such weight the jury deemed they deserved. However, at the point of Dr. Lett's testimony regarding what the victims told her, the trial court instructed the jury as follows:

> Jurors, Dr. Lett will be allowed to testify as to what the children told her, and in this regard, you should consider only the children's statements as they relate to her examination and evaluation. The truthfulness of the statements . . . of the children to the doctor, you cannot consider that, that part of it, whether or not what they said was true or not from her testimony.

This reflects that the trial court, in favor of the defendant, incorrectly limited the jury's consideration and evaluation of the victims' statements to Dr. Lett. The instruction was inappropriate.

## EXCULPATORY EVIDENCE

The defendant complains that evidence regarding the victims' allegations of sex abuse against others was not disclosed to him until midtrial. He asserts that he should have been awarded a mistrial in order to have time to investigate the allegations. He states that he has denied guilt consistently and that he was entitled to time to investigate the other allegations for the purpose of determining how they affected his defense, such as, whether the victims were transferring blame to him of abuse by another and whether the victims had a history of making false claims of abuse.

The record is not clear about the specifics of the purportedly exculpatory evidence. During the cross-examination of Lisa Barrett, the trial court indicated to counsel that the Child Services file

contained a statement regarding the victims' father being accused in the past. The prosecutor reviewed the file and provided a copy of a page to the defendant, stating that she had no knowledge of the information until then. She said it was an allegation against the father, which was investigated and found to be baseless. She told the defendant that he could review all the file's contents if he so desired.

Lisa Barrett was recalled to testify in a jury-out hearing. She acknowledged that the victims' file contained a complaint of sex abuse "many years ago" before the events in the present case. She said that the case investigator had told her that the complaint had been validated. She also acknowledged that she received a referral in March 1998 from a caller who felt that the victims' father may have been abusing them. She said she returned to the school where a schoolmate told her that the second twin had said that her father had sexually abused her. The child also said that the second twin was, in fact, hiding from her father. Ms. Barrett testified that she spoke with the twins, who denied being abused by their father. She testified that the second twin denied hiding from her father and stated that they were playing when she hid in the basement.

The defendant argues that the state violated his discovery rights and that his midtrial discovery of exculpatory information entitled him to a mistrial, and ultimately a new trial, in order to investigate the other claims of sex abuse and assess their value to the defense. The state points to Ms. Barrett's testimony and argues that no information, much less material exculpatory information, was withheld from the defense. We view the record differently. The evidence reflects that two other complaints of sex abuse regarding the victims had been made, one a case worker had "validated" and the other Ms. Barrett determined to be unfounded. These allegations had not been disclosed to the defendant, who certainly was not bound by Ms. Barrett's conclusions.

The problem for the defendant, though, is that the record reflects neither the existence of material exculpatory information nor a request by the defendant regarding specific information of other claims of abuse of the victims that would have placed the state on notice that other allegations would be of significance to the defendant. Constitutional error results "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Kyles v. Whitley, 514 U.S. 419, 433-34, 115 S. Ct. 1555, 1565 (1995) (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383 (1985)). Although we agree that information regarding the other allegations might be of some assistance to the defense, the record before us supports no more than just that, a possibility of the existence of exculpatory information. We cannot merely speculate that the substance of the allegations were materially exculpatory. The trial court did not err in denying the defendant a mistrial or a new trial because of this claim.

## CLOSING ARGUMENT

The defendant contends that the prosecutor made improper comments in her closing argument that require reversal, noting the trial court's refusal to give curative instructions. Specifically, he refers to four instances of personal comments by the prosecutor and one instance that

he says shows the prosecutor told the jury that the victims could not live with an acquittal. In response, the state notes that the defendant did not object to several of the comments. It acknowledges that the defendant did object at one point to the prosecutor stating her opinion that the victims' testimony was "compelling" and to argument that the defendant interprets as concern for the victims if the jury acquits the defendant. The state argues, though, that neither the argument nor the trial court's failure to give a curative instruction prejudiced the verdict. We agree with the state.

The defendant did not object to three of the four comments about which he now complains regarding the prosecutor's personal opinion. He did object to the following argument:

> We've got the testimony of the three girls. It's compelling to me. It's no doubt that that happened.

The defendant also complained about the prosecutor essentially asking the jury to consider the impact of an acquittal on the victims. The defendant points to the following argument:

> These children are looking to you for justice, and you have to determine that. You have to determine, How are they going to live with this from here on out? Will they see that you don't get by for wrong things, you don't get by for bad deeds? Or are they going to see Ken Chambly go free for something that he has done in violating their total innocence?

The trial court agreed with the defendant's objections but did not believe that a curative instruction was needed.

Assertions of personal belief by an attorney regarding credibility of witnesses constitute improper argument. See Lackey v. State, 578 S.W. 2d 101, 107 (Tenn. Crim. App. 1978). Also, asking the jury to consider the impact of an acquittal on the victims is improper argument, tending to risk a decision based upon passion and not upon the facts and the law. See State v. Middlebrooks, 995 S.W.2d 550, 559-60 (Tenn. 1999). But to rise to the level of misconduct that would require reversal of the convictions, prejudice in the result must be shown. See Harrington v. State, 215 Tenn. 338, 340, 385 S.W.2d 758, 759 (1965). Succinctly put, we do not believe the improper argument warrants reversal. In context, the argument was neither flagrant nor of long duration given the remaining arguments. We conclude that the argument does not affirmatively appear to have effected the results of the trial. Tenn. R. Crim. P. 52(a).

## SENTENCING

The defendant contends that the trial court relied upon inapplicable enhancement factors in imposing the sentences. He also asserts that the trial court ignored applicable mitigating factors.

As to all three victims, the trial court found that the defendant had treated them with exceptional cruelty during the commission of the offense and had committed the offenses to gratify his desire for pleasure or excitement. See Tenn. Code Ann. § 40-35-114(5), (6). With regard to the handicapped twin, the trial court also found that she was particularly vulnerable to the offense because of her disability. See Tenn. Code Ann. § 40-35-114(4). The defendant argues that there is no evidence to warrant a finding of particularly great injuries and that the gratification aspect to the conduct is already contained within the offense itself. The state agrees, but it notes that the defendant does not contest application of factor (4) to the second twin. Also, it argues that enhancement factor (15), regarding abuse of a position of public or private trust, should apply "based on defendant's close relationship with the family and his clear abuse of the position of trust that he enjoyed in the Griswold home."

We tend to agree with this last argument. In State v. Kissinger, 922 S.W.2d 482, 488 (Tenn. 1996), the court gave the following description of the requisite position of trust:

> The position of parent, step-parent, babysitter, teacher, coach are but a few obvious examples. The determination of the existence of a position of trust does not depend on the length or formality of the relationship, but upon the nature of the relationship. Thus, the court should look to see whether the offender formally or informally stood in a relationship to the victim that promoted confidence, reliability, or faith.

In the consolidated case regarding Guy Phelan Roberson, the court refused to apply factor (15), noting that he was a casual visitor in the home and that no proof suggested that he visited frequently or that the victim or other children at the home were placed in his care. Id. at 489. In this respect, we believe that the defendant in the present case was a frequent visitor who could fall within the parameters of Kissinger. Thus, we acknowledge the application of factor (15) in this case.

However, we disagree with the trial court's failure to apply mitigating factors. The defendant, fifty-one years old at the time of sentencing, had no prior criminal record of any type. He had a good work record. The probation report states that the defendant's ex-wife said she was shocked and surprised that the defendant was found guilty. She stated that she had never had any indications in the past about this type of behavior and had no reason to believe that the defendant ever abused his own daughter. We note that several character witnesses testified at the defendant's trial on his behalf.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). However, we believe the trial court incorrectly applied two enhancement factors and did not give due consideration to existing mitigating factors. Under these circumstances, the presumption of correctness falls and our review is de novo upon the record. We believe that the record supports applying enhancement factor (4) regarding the second twin's case, given her handicap. However, we note that she ultimately testified

against the defendant, i.e., although she was impaired, she maintained the ability to communicate with others. We also conclude that enhancement factor (15) applies in all the cases, although the level of trust involved is not very high. On the other hand, we believe that the absence of a prior criminal history, the past steady employment, and the support of character witnesses provide considerable mitigation. We conclude that the eight-year sentences are supported by the record but that the ten-year sentence should be reduced to nine years.

In consideration of the foregoing and the record as a whole, we reverse the judgments of conviction and remand the case to the trial court for further proceedings.

_____
JOSEPH M. TIPTON, JUDGE