# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs May 24, 2011

## STATE OF TENNESSEE v. ANTWAN DEEMEEK HUDSON

**Appeal from the Criminal Court for Sullivan County**
**No. S57,195     Robert H. Montgomery, Jr., Judge**

---

**No.  E2010-02005-CCA-R3-CD - Filed February 2, 2012**

---

Appellant, Antwan Deemeek Hudson, was convicted by a Sullivan County Jury of two counts of rape of a child.  The trial court sentenced him to two, concurrent sentences of twenty-five years.  On appeal, Appellant argues that the evidence was insufficient to support his convictions, the trial court erred in allowing a doctor to testify as to a statement made to him by the victim's parents, and the trial court erred in excluding Appellant's testimony regarding the results of a medical test.  After a thorough review of the record, we conclude that Appellant's argument regarding the sufficiency of the evidence is actually a plea for this Court to reweigh the evidence, which we are precluded from doing.  In addition, we conclude that the evidence is more than sufficient to support his convictions.  We also conclude that the statement made by the parents to the doctor was erroneously allowed into evidence under an exception to the hearsay rule, but the error was harmless.  Due to errors on the judgment forms, we remand for the correction of the judgment forms to reflect that Count 1 and Count 3 will run concurrently to each other.  In all other respects, the judgments are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., Joined.

Steve McEwen, Mountain City, Tennessee, (on appeal) and Richard A. Tate, Assistant Public Defender, Blountville, Tennessee, (at trial) for appellant, Antwan Deemeek Hudson.

Robert E. Cooper, Jr., Attorney General and Reporter, Nicholas W. Spangler, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General, and Amber Massengill, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

On August 19, 2009, Dr. Kelly Chumbley examined B.B.[1], the victim, in the emergency room at the Bristol Regional Medical Center. When B.B. arrived at the emergency room, she had a rash on her genitalia which included lesions on her vaginal area and vaginal discharge. B.B. also complained of burning when she urinated. B.B.'s mother and step-father were in the room throughout the examination. Dr. Chumbley examined B.B. and identified the lesions as herpetic lesions. He sent a sample for a viral culture, and the sample tested positive for herpes simplex virus, a sexually transmitted disease. Dr. Chumbley asked B.B. if she had had sexual intercourse. B.B. adamantly denied it. Shortly thereafter, Dr. Chumbley left the examination room. When he returned, B.B.'s mother and step-father informed Dr. Chumbley that B.B. had told them that she had sexual intercourse with an older step-sibling and that it had been ongoing. Dr. Chumbley reported the incident to the proper authorities.

B.B.'s mother, M.H., testified that B.B.'s birthdate is July 24, 1998, and Appellant's birthdate is April 16, 1991. She testified that she; her husband, D.H.; B.B.; and B.B.'s sisters moved from Florida to Tennessee in December of 2006. Appellant followed in July 2007. The family lived together along with D.H.'s mother. In June or August 2008, D.H.'s mother bought her own house and moved out of D.H.'s house. B.B. and Appellant occasionally stayed with their grandmother, D.H.'s mother.

B.B. testified at trial. She stated that she lived in Miami, Florida before she moved to Tennessee. She stated that the whole family would stay with her grandmother when their house was being repaired. While they were staying with her grandmother, Appellant had sexual intercourse with her upstairs in her grandmother's house while everyone else in the family was downstairs. B.B. said that she and Appellant had intercourse more than once. She specifically recalled an incident on July 25, 2009, between her fourth and fifth grade years of school. She also stated that she and Appellant had sexual intercourse another time within two weeks of July 25, 2009. Subsequently on August 19, 2009, her parents took her to the emergency room. B.B. stated that she remembered telling the doctor that something happened with her brother, Appellant. She also related the events to individuals at the Children's Advocacy Center.

---

[1] It is the policy of this Court to use initials to identify minor victims of sexual abuse and their family members.

Dr. Katherine Scruggs is a gynecologist and volunteers with the Children's Advocacy Center of Sullivan County. She examined B.B. at the Children's Advocacy Center. B.B. told Dr. Scruggs that she had had sexual contact with Appellant and that he had given her genital herpes through this contact. During the physical examination, Dr. Scruggs discovered that B.B. had "a very, very thin hymen." Dr. Scruggs described it as "flattened and extremely thin." She testified that such a thin hymen is unusual for a child B.B.'s age. She stated that a thin hymen is consistent with sexual abuse. Dr. Scruggs testified that a girl's hymen does not always rupture or tear during sexual intercourse. She stated that sometimes the hymen will stretch instead, but with repeated sexual penetration one is more likely to see a thinning and flattening of the hymen. Dr. Scruggs stated that "[i]n studies that have looked at children who have been known to have been penetrated [any obvious abnormalities of the hymen are present] less than ten percent of the time."

Detective Mike McCoy is a detective with the Bristol Police Department. He was contacted by the Department of Children's Services ("DCS") regarding the allegations made by B.B. against Appellant. Detective McCoy met with Ms. Maggie Vance of DCS at the Children's Advocacy Center to observe an interview of B.B. Amy Bockman, a forensic interviewer, conducted the interview while Detective McCoy observed in a separate room through a two-way mirror. On August 28, 2009, Detective McCoy and Ms. Vance went to Tennessee High School, where Appellant attended school. They interviewed him in a room at the high school. Appellant gave the following statement:

> My sister, [B.B.], and I started having sexual relations when we lived in Miami. We moved to Bristol, Tennessee about three years ago. [B.B.] and I have had sex at least ten times since moving to Bristol, Tennessee, maybe more. When I say sex, I mean I penetrated [B.B.'s] vagina with my penis. The most recent sexual events took place this summer after school was out. [B.B.] got in bed with me one night when we were staying at my grandmother's house on Kentucky Avenue in Bristol, Tennessee. [B.B.] and I had sex, which means I put my penis into her vagina. I sometimes also performed oral sex on [B.B.] and she performed oral sex on me. [B.B.] told me that I would like her performing oral sex on me but I really didn't like it.

> The sexual contact between me and [B.B.] was always consensual and was never forced by either party. [B.B.] usually came to me wanting sex. I always try to make my brothers and sisters happy and have a hard time telling them no when they ask me for something. We, [B.B.] and I, agreed not to tell anyone about us having sex because we knew we would probably get in trouble.

[B.B.'s twin sister] got into bed with me on one occasion and tried to rub my penis but I wouldn't let her. I thought it was [B.B.] and did not realize it was [B.B.'s twin sister] until she got out of bed and left the room. I have never had sex with [B.B.'s twin sister], just [B.B.].

This statement was introduced at trial. Appellant was allowed to return to class after giving the statement.

Appellant also testified at the trial. He denied the accusations that he had sexual intercourse with his sister, B.B. He stated that he thought she was going to be in trouble, so he said that he had sexual intercourse with her so she would not get hurt. Appellant stated that he had never shown any signs of the genital herpes virus.

M.H. was called by Appellant to testify. She stated that she knows B.B. pretty well and that B.B. is not always forthcoming. With regard to B.B.'s ability to tell the truth, M.H. said it is a last resort for B.B.

On February 25, 2010, Appellant was charged with two counts of rape of a child and two counts of incest. The incest counts were subsequently dismissed. A jury trial was held on July 7, 2010. Appellant was convicted of both counts of rape of a child. The trial court sentenced Appellant to two twenty-five year sentences to be served concurrently. Appellant appeals from his convictions.

## ANALYSIS

### Insufficient Evidence

Appellant's first argument is that the evidence was insufficient to support his convictions for rape of a child. When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have

found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S .W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Appellant makes several arguments to support his assertion that the evidence was insufficient. He states that B.B.'s testimony is insufficient to support the convictions because she did not divulge that she was sexually active until pressed to do so by authority figures, her testimony did not consist of enough details, and her testimony was inconsistent and lacked credibility. Appellant also argues that his statement to Detective McCoy "must be considered within the context in which it was taken." He states that he was eighteen years old and questioned without his parents present. He argues that he was not informed that he could be imprisoned for the offenses in question. He states that he confessed to Detective McCoy because he thought B.B. was going to get into trouble and he wanted to protect her.

These arguments do not address how the evidence presented at trial was not sufficient to meet the requirements as set out in the statute. Rather, Appellant is asking us to reweigh the evidence presented and determine both the victim's and Appellant's credibility. As stated above, this Court is precluded from doing what the Appellant is asking. The jury in this case is the sole arbiter of how the evidence should have been weighed and the credibility of the witnesses presented at trial.

Tennessee Code Annotated section 39-13-522 states, "Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." When taken in a light most favorable to the State, the evidence showed that B.B. stated during trial that she and Appellant had sexual intercourse at least twice during the summer of 2009. She stated that his penis penetrated her vagina. Appellant's statement to Detective McCoy was presented, in which Appellant admitted having sexual intercourse with B.B. on multiple occasions. At trial, Appellant was allowed to testify that he was trying to protect B.B. when he made the

statement and he was allowed to testify that he had no symptoms of genital herpes and did not have the virus as far as he knew. The jury found the State's version of events and its witnesses more credible than that presented by Appellant. The facts shown at trial meet the elements set out in the statute.

Therefore, this issue is without merit.

## Hearsay exception-803(4)

On appeal, Appellant argues that the trial court erred when it allowed Dr. Chumbley to testify about the victim's parents telling him that the victim told them that Appellant had sexual intercourse with her. Appellant argues that because the victim herself did not tell Dr. Chumbley the information, then the hearsay exception under Rule 803(4) of the Tennessee Rules of Evidence does not apply. The State argues that the statement was properly admitted for medical diagnosis under the hearsay exception in question. The State also argues that even if it was admitted in error, Appellant is unable to prove that it more than likely affected the judgment because the victim testified that she had sexual intercourse with Appellant and Appellant admitted he had sexual intercourse with the victim in his statement to police that was admitted into evidence.

Rule 803(4) of the Tennessee Rules of Evidence allows the admission of otherwise inadmissible hearsay by permitting the admission of statements made for the purposes of medical diagnosis and treatment. *See* Tenn. R. Evid. 803(4). Such statements are deemed reliable enough to be admissible because the motivation to receive appropriate medical care is thought to be more compelling than the motivation to lie. *See State v. Stinnett*, 958 S.W.2d 329, 331 (Tenn. 1997). Moreover, if a medical professional relied on these statements, such reliance gives the statements a further indicia of trustworthiness. *See id.*

Before a hearsay statement in a case such as this may be admitted under Rule 803(4), the trial court must first determine that the statement was made for the purpose of medical diagnosis and treatment. *State v. Livingston*, 907 S.W.2d 392, 396 (Tenn. 1995); *see also Ruff v. State*, 978 S.W.2d 95, 98 (Tenn. 1998) (noting that "because a prior complaint constitutes hearsay, it is not admissible as substantive evidence unless it satisfies some hearsay exception"; thus, *Livingston* did not create a new hearsay exception). Thus, statements made to a physician whose sole role is to diagnose or *evaluate* the declarant's condition, as opposed to statements made to one whose role is to both diagnose and *treat* the declarant, are inadmissible in Tennessee. *See State v. McLeod*, 937 S.W.2d 867, 873 (Tenn. 1996).

Courts must evaluate all the circumstances surrounding a statement to determine if the statement was made for the purposes of medical diagnosis and treatment. This test is equally

applicable to both child- and adult-declarants. *See McLeod*, 937 S.W.2d at 870; Neil P. Cohen et al., Tennessee Law of Evidence § 8.09[5][a] (2011). However, statements made by child-declarants deserve special scrutiny because "the child's ability to articulate the reason for the statement may be affected by age or developmental maturity." *Stinnett*, 958 S.W.2d at 331-32 (citing *McLeod*, 937 S.W.2d at 870). The trial court should hold a jury-out hearing in order to make an admissibility determination, and when making this determination, the trial court should ensure that the hearsay statement was not "improperly influenced by another, one made in response to leading or suggestive questions, or inspired by a custody battle or family feud." *Stinnett*, 958 S.W.2d at 332.

Finding, however, that the victim's identification of the defendant was made during the course of a medical visit for both diagnostic and therapeutic purposes does not end our inquiry. In *State v. Livingston*, 907 S.W.2d 392, 396 (Tenn. 1995), our supreme court addressed the issue of whether statements made by a child-declarant identifying the child's abuser are admissible under Rule 803(4). *Id.* Adopting this Court's analysis, the supreme court stated that the name and identity of a child-declarant's sexual abuser is reasonably pertinent to diagnosis and treatment if the abuser is a member of the child-declarant's household. *Id.* If the abuser is a member of the child's household, it becomes necessary to establish the identity of the abuser in order to prevent the child from being returned to the abuser and to properly treat the emotional and psychological effects of such abuse. *Id.* However, before this hearsay is admitted, the trial court must determine that there is a:

> "sufficient indicia of the declarant's proper motivation to ensure the trustworthiness of her statements to the testifying physician." Such a situation could exist where the physician "makes clear to the victim that the inquiry into the identity of the abuser is important to diagnosis and treatment, and the victim manifests such an understanding."

*Id.* (quoting *United States v. Renville*, 779 F.2d 430 (8th Cir. 1985)) (internal citations omitted). While the supreme court adopted the analysis above, in a footnote the court stated that "[i]n order to properly diagnose and treat the child, circumstances may suggest that it is equally important to discover the identity of the perpetrator without regard to residence. We do not decide that issue here." *Id.* at 397 n.4.

In *State v. Rucker*, 847 S.W.2d 512 (Tenn. Crim. App. 1992), this court addressed whether statements given by third parties to treating medical personnel, as opposed to statements given by a minor patient to medical personnel, fell within the exception to the hearsay rule for medical treatment and diagnosis. In *Rucker*, the victim's mother took the

victim to the hospital after discovering her estranged husband in the hallway of her home with the victim. 847 S.W.2d at 514. When they arrived at the hospital, the victim's mother told the nurse that she found her husband and daughter in the hall. She also told the nurse that the victim replied "yes" when the victim's mother asked her if the defendant had been "mess[ing]" with her. *Id.* The court held that the mother's description of finding the defendant and the victim in the hallway could come in under the medical diagnosis and treatment exception to the hearsay rule because it constituted medical history. *Id.* at 516-17. However, with regard to the victim's affirmance that the defendant had "messed" with her, the court concluded that it would only be "admissible if the statement falls within the purview of another exception to the hearsay rule." *Id.* at 517. This Court ultimately held the victim's statement to the mother as admissible as an excited utterance. *Id.* It thus appears from *Rucker*, that statements made by the victim directly to a third party and then relayed to a treating medical professional by the third party do not fall within the medical diagnosis and treatment exception to the hearsay rule.

In the case at hand, the victim told her parents that she had had sexual intercourse with her brother while the doctor was out of the examination room. When the doctor returned, the victim's parents relayed the information to the doctor. Under *Rucker*, this factual situation would require the victim's statement to her parents to fall under another hearsay exception.

We have been unable to find a hearsay exception under which this statement would fall. However, if we determine that the exclusion of Dr. Chambley's report was harmless error, then Appellant's conviction need not be overturned. *See State v. Ferrell*, 277 S.W.3d 372, 380 (Tenn. 2009). Our supreme court clarified the analysis to be undertaken by Tennessee appellate courts with regard to harmless error in *State v. Rodriguez*, 254 S.W.3d 361 (Tenn. 2009) by stating the following:

> Tennessee's harmless error doctrine, reflected in Tenn. R. App. P. 36(b), rests on a foundation that recognizes that a person accused of a crime is entitled to an essentially fair trial and that a person convicted of a crime as a result of an essentially fair trial is not entitled to have his or her conviction reversed based on errors that, more probably than not, did not affect the verdict or judgment. When the appellate courts conduct a harmless error analysis using Tenn. R. App. P. 36(b), they must be careful to avoid becoming a second jury by conflating the harmlessness inquiry with their own assessment of the Appellant's guilt. The analysis is more than simply a calculation of whether sufficient evidence exists to support the conviction. It requires a careful examination of the entire record to determine whether the non-constitutional

error involving a substantial right "more probably than not affected the judgment or would result in prejudice to the judicial process." *See State v. Toliver,* 117 S.W.3d [216,] 231 [(Tenn. 2003)] (finding an error to be harmful even though the evidence was legally sufficient to affirm the convictions); *see also State v. Denton*, 149 S.W.3d [1,] 15-17 [(Tenn. 2004)]; *Blankenship v. State*, 219 Tenn. 355, 360, 410 S.W.2d 159, 161 (1966); *Peek v. State*, 21 Tenn. (2 Hum.) [78,] 88 [(1840)].

*Rodriguez*, 254 S.W.3d at 373-74 (footnotes omitted).

There was other evidence presented at trial to prove that Appellant and the victim had sexual intercourse. The victim specifically testified at trial that she and Appellant had intercourse. She was subject to cross-examination. Her testimony never wavered and was clear. Also, in Appellant's written and signed statement to police, he admitted that he had sexual intercourse with the victim. We find it inconceivable that the outcome of the trial would have been any different if the statement in question had been excluded from evidence. Therefore, the erroneous introduction of the statement in question is not a basis upon which to overturn Appellant's conviction.

This issue is without merit.

### Appellant's Testimony

Appellant also argues that the trial court erred in excluding his testimony regarding the results of a medical test to determine whether he had the herpes virus. Appellant argues that his testimony is admissible under Rule 803(4) as a hearsay exception. The State argues that the rule "does not apply to the diagnosis rendered by the doctor . . . [and] [i]nstead applies to declarations of past physical condition made to treating doctors."

After a bench conference discussing the admissibility of Appellant's testimony regarding his test results for the herpes virus, Appellant was allowed to testify to the following:

[Defense Counsel]: [Appellant], I'm not going to ask you about the results of any tests. I won't ask you about that. Have you ever been to get a test?

[Appellant]: Yes, I have.

[Defense Counsel]: Have you ever shown any signs of the herpes virus?

[Appellant]: No, I haven't.

[Defense Counsel]: Without going into what any doctor or results have told you, do you [believe] that you have the herpes virus?

[Appellant]: No, I don't.


Initially, we point out that Appellant has presented no authority to support his argument that Rule 803(4) or any other evidentiary rule would allow a lay witness to testify as to what his medical test result are. In fact, Appellant states the following in his brief, "It is acknowledged that other courts analyzing similar versions of this exception have interpreted it to be limited to statements made by the one actually seeking medical treatment or care." We note that we have been unable to find any case addressing the issue raised by Appellant.

Under the circumstances, we conclude that if it was indeed error for the trial court to exclude Appellant's testimony about the test results for the herpes virus it was harmless error. Appellant was allowed to testify that he received a test to determine if he had the herpes virus. He was allowed to testify that he did not have any symptoms of the herpes virus and that he had no reason to believe that he had the herpes virus. In other words, he was able to put forth his contention that he was not infected with the herpes virus.

Therefore, this issue is without merit.

<u>Judgment Forms</u>

Finally, we have discovered an error on the judgment forms. The judgment forms for both Counts 1 and 3, rape of a child, state that the sentences for those convictions are to run concurrently with Count 2, incest. However, Count 2 was dismissed. The judgments need to be corrected to reflect that Count 1 will run concurrently with Count 3 and that Count 3 will run concurrently with Count 1. Therefore, we remand the matter for correction of the judgment forms.

## CONCLUSION

As stated above, we are remanding the matter for correction of the judgment forms. In all other respects, the judgments are affirmed.

_____
JERRY L. SMITH, JUDGE